Richard M. BLAIR, Plaintiff,

v.

YOUNG PHILLIPS CORPORATION; Graphic Systems, Inc.; the Young Phillips Employment Agreement; and the Young Phillips Executive Salary Continuation Agreement, Defendants.

No. CIV.A.1:00–CV–01130.

United States District Court, M.D. North Carolina.

Oct. 30, 2002.

J. Griffin Morgan, Robert M. Elliot, Elliot Pishko Morgan, P.A., Winston–Salen, NC, for Plaintiff.

Daniel R. Taylor, Jr., Louis Whittier Doherty, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter, originally filed in state court and removed by Defendants pursuant to 28 U.S.C. § 1331, is before the court on Defendants' motion for summary judgment. This case involves Plaintiff Richard M. Blair ("Plaintiff") whose employment with Young Phillips Corporation ("Young Phillips") and Graphic Systems, Inc. ("GSI") (collectively "Defendants") was terminated for disputed reasons. The amended complaint alleges that Defendants breached their fiduciary duties owed to Plaintiff in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a)(1), and, therefore, Plaintiff is entitled to relief under ERISA, Section 502(a)(3), 29 U.S.C. § 1132. Plaintiff also claims that his termination was for the purpose of wrongfully

interfering with his rights to benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Lastly, Plaintiff raised numerous state law claims but has acknowledged that his state law claims are preempted by ERISA in light of this court's earlier ruling that ERISA applies to the benefits Plaintiff seeks under the employment agreement. Furthermore, Plaintiff has stipulated to the dismissal of his claims for bonus compensation. Accordingly, only Plaintiff's claims for breach of fiduciary duties and wrongful termination are before the court on Defendant's current motion.

## FACTS

Plaintiff was a longtime executive of Young Phillips, a North Carolina corporation. Initially hired as an executive vice president and chief operating officer ("COO") in 1988, Plaintiff eventually took over as president and COO in 1991. In 1998, Plaintiff was named vice chairman of the board of directors of Young Phillips. Although he reported to Ben Phillips, Plaintiff was the principal officer of Young Phillips and managed the company on a day-to-day basis.

During Plaintiff's employment with Young Phillips, he was protected by employment agreements which were periodically renewed and remained relatively consistent. On May 7, 1998, Plaintiff and Young Phillips entered into a final employment agreement ("Agreement"). Effective January 1, 1998, it provided for a term of employment of two years and for severance compensation in the event of termination "without cause." With regard to the two-year term of employment, the Agreement provided that Plaintiff would serve as COO for "a continuing term of

two years which is automatically extended on a daily basis so that the term remains a full two years at all times." (Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 1.) This term of employment, however, would "not be extended automatically beyond July 31, 2004." (*Id.*) As to the severance provision, Young Phillips maintained the right to terminate Plaintiff "for cause" at any time. If Plaintiff was terminated "for cause" he would have no right to receive any compensation or benefits following his termination. The term "for cause" was defined by the Agreement to include:

chronic alcoholism, drug addiction, criminal dishonesty, misappropriation of any money or other assets or properties of [Young Phillips], bankruptcy of [Plaintiff], willful violation of specific and lawful directions of the Board of Directors of [Young Phillips] or their designees (which directions must not be inconsistent with the provisions of this Agreement), failure or refusal to perform the services required of [Plaintiff] under this Agreement and any other acts or omissions that constitute grounds for cause under the laws of the State of North Carolina.

(Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 3.) The Agreement also contained a provision entitled "Voluntary Termination." Under this provision the Agreement could "be terminated by either party ... upon 30 days written notice to the other party." (*Id.*) However, if Young Phillips terminated the Agreement for any reason other than Plaintiff's death, disability, or "for cause" Plaintiff would receive sixty per cent (60%) of his salary as well as other fringe benefits listed in the Agreement for twenty-four (24) months or until July 31, 2004, whichever came first.[1] On

---

1. In its entirety, the "Voluntary Termination" section of the Agreement provides:

This Agreement may be terminated by either party hereto upon 30 days written no-

the same date, Plaintiff and Young Phillips executed the Executive Salary Continuation Agreement which provided substantial benefits to Plaintiff after his retirement if his employment was not terminated before the date of his retirement by his voluntary resignation or because of involuntary termination for cause.

In the spring of 1999, Young Phillips and GSI commenced serious discussions concerning the potential acquisition of Young Phillips by GSI. Plaintiff and a local attorney, Eugene (Gene) Johnson, led the discussions for Young Phillips; and Jon Wright, President of GSI, and Jim Clark, financial officer of GSI, handled negotiations for GSI.

On July 31, 1999, GSI acquired all or most of the stock of Young Phillips. After this acquisition, Young Phillips operated as a subsidiary of GSI. Most of the employees of Young Phillips, including the principals, remained with the company. As a term of GSI's acquisition, Plaintiff resigned as an officer and board member. However, Plaintiff was immediately restored to his position when he and GSI entered into an Addendum Agreement of Employment ("Addendum"). Over the objection of Jim Clark, GSI agreed to be bound by the Agreement between Plaintiff and Young Phillips. Plaintiff remained actively employed pursuant to the terms of the Agreement, but thereafter reported to Jon Wright and Jim Clark, not Ben Phillips.

Shortly after the acquisition, Plaintiff received a memorandum from Jim Clark dated August 17, 1999. In the memorandum, Clark informed Plaintiff that, based on conversations between Clark and Jon Wright, he must obtain prior approval before taking a number of actions on behalf of Young Phillips. Plaintiff responded by memorandum dated August 19, 1999, stating that he "concur[red] with the bulk of the subject matter" but suggested "reasonable parameters" to allow for better operation. (Defs.' Mot. Summ. J., Ex. 6.) Plaintiff and Wright spoke by telephone and reviewed Plaintiff's suggestions. Plaintiff claims that Wright told him during this conversation that the only purpose of the memorandum was to keep Wright advised of "material issues."

The events that transpired between the GSI acquisition of Young Phillips and Plaintiff's termination are highly disputed. Plaintiff claims that he performed all of his responsibilities within the limitations set by GSI. Plaintiff claims that he was in "constant communication" with Jim Clark and Jon Wright to get approval for decisions to be made or actions to be taken. (Pl.'s Ex. Opp'n Defs.' Mot. Partial Summ. J., Ex. 1 at 4 ¶ 15, 5 ¶ 17.) Plaintiff states that he had frequent telephone conversations with Wright and Clark and that both would visit the Young Phillips facility in Clemmons on a regular basis. Also, Plaintiff claims that GSI was totally involved in the operation of Young Phillips. Plaintiff avers that he was never aware of any

---

tice to the other party. If this Agreement is terminated by the company other than [due to death, disability, or 'for cause'], the Executive shall receive sixty percent (60%) of the salary paid on a monthly basis and the Fringe Benefits listed under Paragraph 1 of Schedule 3.2 for the twenty-four (24) month Term or until July 31, 2004, whichever constitutes the shorter time period. If this Agreement is terminated by the Executive pursuant to this Section 4.4, the Executive shall receive the Fees, Fringe Benefits, and Expense Reimbursements payable through the date of such termination only.
(Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 3.) The "Fringe Benefits listed under Paragraph 1 of Schedule 3.2" included: "Health, life, disability, vacation, time off, and retirement coverage consistent with that currently offered to employees or [sic] equivalent position." (Pl.'s Br. in Support of Mot. to Remand, Ex. 1.)

disapproval by GSI; that he never received a single writing from GSI indicating any discontent over his performance; and that, although he spoke to both Clark and Wright "weekly," neither ever expressed any discontent over his performance. Then, on August 23, 2000, without prior notice, Jon Wright sent a letter to Plaintiff terminating him "for cause."

Defendants claim that by the summer of 2000 Jon Wright and Jim Clark were aware of numerous instances in which Plaintiff had failed to follow specific instructions. They indicate that Plaintiff did many things without first obtaining approval as required under the guidelines set out in the August 1999 memorandum. Also, there were other instances where Plaintiff failed to do what he had been asked to do. Finally, Defendants claim that in August 2000 Jim Clark and Plaintiff had a very heated telephone conversation in which Plaintiff indicated to Clark that he was gathering information to provide to an attorney for Ben Phillips and that he planned to do so even after instruction from Clark not to do so. Defendant contends that the accumulation of these reasons and the telephone conversation with Jim Clark prompted Clark and Jon Wright to terminate Plaintiff's employment "for cause."

Plaintiff originally filed this action in North Carolina state court. Defendants filed notice of removal of this action to this court, claiming that this case should be preempted by ERISA. This court denied Plaintiff's motion to remand to state court, holding that Plaintiff's claims are governed by ERISA. Plaintiff then filed an amended complaint alleging claims under ERISA arising from the employment agreement. After discovery, Plaintiff filed a second amended complaint alleging additional claims under ERISA arising from the parties' Executive Salary Continuation Agreement. Defendants then moved for summary judgment.

Plaintiff alleges that Defendants breached their fiduciary duties owed to Plaintiff in violation of ERISA, 29 U.S.C. § 1104(a)(1) and therefore Plaintiff is entitled to relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiff also claims that his termination was for the purpose of wrongfully interfering with his right to benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Plaintiff also raised numerous state law claims, but has acknowledged that his state law claims are preempted by ERISA in light of this court's earlier ruling that ERISA applies to the benefits Plaintiff seeks under the Employment Agreement. As a result, Plaintiff does not oppose Defendants' motion for summary judgment on these claims. Furthermore, Plaintiff has stipulated to the dismissal of his claims for bonus compensation.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on

summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence from which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## A. *Breach of Fiduciary Duty*

■ Plaintiff avers that Defendants have breached their fiduciary duties in their administration of the Agreement and Executive Salary Continuation Agreement under ERISA, 29 U.S.C. § 1104(a)(1), and that therefore Plaintiff is entitled to relief under Section 502(a)(3). Not only do Defendants contend that they have not breached any fiduciary duty owed to Plaintiff, but they also contend that Plaintiff is barred from any such relief under Section 502(a)(3) [2] because he already has an effective avenue of appropriate relief in his denial of benefits claims under ERISA Section 502(a)(1)(B).

■ ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and for the exclusive purpose of providing benefits to participants and their beneficiaries with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1). A fiduciary has an unyielding duty of loyalty to the beneficiary that precludes him from making material misrepresentations to the beneficiary. *See Griggs v. E.I. Dupont de Nemours & Co.,* 237 F.3d 371, 380 (4th Cir.2001).

■ The United States Supreme Court has recognized the rights of an individual participant to sue a person acting as a fiduciary under an ERISA plan for breach of fiduciary duty, and to seek relief pursuant to 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). To establish such a claim, the plaintiff must show: (1) that defendants were fiduciaries of the ERISA plan; (2) that defendants breached their fiduciary responsibilities under the plans; and (3) that the participant is in need of injunctive or "other appropriate equitable relief" from the court to remedy the violation or enforce the plan. *Griggs,* 237 F.3d at 379–80.

■ ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21); *see also Griggs,* 237

**2.** (a) A civil action may be brought—
   (1) by a participant or beneficiary—

   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which

violates any provision of this subchapter or the terms of this plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132.

F.3d at 379–80. This definition focuses not solely on the fiduciaries named in the plan, but also on any other persons who exercise authority over the plan. *See* 29 U.S.C. § 1002(16). In the present case, the court agrees with Plaintiff that Defendant Young Phillips is the apparent administrator of each of the Plans and that Defendant GSI, through its principal Jon Wright, exercised absolute authority over the Plans. As a result, Defendants are fiduciaries under the ERISA plan at issue.

Before reaching the issue of whether Defendants breached their fiduciary responsibilities under the ERISA plans, however, the court must first address the question of whether Plaintiff may even proceed with this cause of action. Under ERISA, a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff asserts two claims that come under the wording of this statute: (1) a claim for severance benefits Plaintiff contends he is due under the Agreement, and (2) a claim for benefits that Plaintiff contends he will be due in the future under the Executive Salary Continuation Agreement. *See* Am. Compl. ¶¶ 25–27, 70–71. Plaintiff further contends that he is due equitable relief due to Defendants' alleged breach of their fiduciary duties under each claim. Defendants argue that ERISA does not permit recovery due to a breach of fiduciary duty in addition to recovery of benefits. Defendants contend that ERISA allows recovery under a breach of fiduciary duty claim only if other adequate relief has not been provided elsewhere.

Plaintiff asserts, however, that the Fourth Circuit decision in *Griggs v. E.I. Dupont de Nemours* supports his contention that he may proceed with a breach of fiduciary duty claim because he is seeking injunctive relief which qualifies as "other appropriate equitable relief" under ERISA Section 502(a)(3). In *Griggs*, the plaintiff claimed that DuPont breached its fiduciary duty by leading him to believe that he was eligible for a tax-deferred lump sum distribution of early retirement benefits under DuPont's temporary pension system and then failing to notify him when DuPont learned that his election to receive such a distribution was not permitted by federal tax laws. Instead, DuPont made the distribution directly to Griggs, which resulted in an immediate tax and defeated the reason that Griggs elected to retire early. Griggs sought relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). The district court held that DuPont did breach its fiduciary duty, but also held that Congress provided no remedy under ERISA. The Fourth Circuit reversed, holding that Griggs' requested remedy was potentially available under ERISA's "other appropriate equitable relief" provision. *Griggs*, 237 F.3d at 371.

In determining whether Griggs had a breach of fiduciary duty claim that would allow him to proceed, the Fourth Circuit stated that the "trick comes in determining what qualifies as 'appropriate equitable relief.'" *Griggs*, 237 F.3d at 384. The court explained that

> even if the redress sought by a beneficiary under ERISA § 502(a)(3) is a classic form of equitable relief, it must be *appropriate* under the circumstances. For example, *such relief is not 'appropriate' equitable relief 'where Congress elsewhere provided adequate relief for a beneficiary's injury' and there is 'no need for further equitable relief.'*

*Id.* at 385. (italics provided by Fourth Circuit; other emphasis added) (quoting *Varity*, 516 U.S. at 515, 116 S.Ct. 1065). The

court noted that Griggs did not have an available denial of benefits claim under Section 502(a)(1) because "when he received his lump sum payment, he received all that he was entitled to receive from DuPont—there are no outstanding benefits." *Id.* at 385 n. 7. Thus the Fourth Circuit actually reaffirmed its prior holding in *Coyne & Delany Co. v. Blue Cross & Blue Shield,* 102 F.3d 712, 714 (4th Cir. 1996), and followed the weight of other authorities by holding that, where a participant is provided adequate relief by the right to bring a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy in a breach of fiduciary duty claim under Section 1132(a)(3). *See also Varity,* 516 U.S. at 515, 116 S.Ct. 1065; *see, e.g., Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 615–16 (6th Cir.1998); *Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir.1998); *Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir.1996).

In the present case, Plaintiff has already pled two denial of benefits claims under Section 502(a)(1)(B). Unlike the plaintiff in *Griggs,* Plaintiff already has an adequate avenue of relief for his denial of benefits.[3] Although Plaintiff claims that he is requesting other kinds of injunctive relief, his claim is clearly one for benefits.

As a result, Plaintiff's claims for breach of fiduciary duty under Section 502(a)(3) will be dismissed as a matter of law.

### B. *Wrongful Termination*

■  Plaintiff also seeks damages under Section 510 of ERISA, 29 U.S.C. § 1140. Plaintiff asserts that he was terminated from employment for the purpose of interfering with his rights to benefits protected by ERISA.

■  Section 510 of ERISA provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled to under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. "The primary focus of section 510 is to 'prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested [benefits].'" *Conkwright v. Westinghouse Elec. Corp.,* 933

---

**3.** The primary "other appropriate relief" which Plaintiff believes is available under his breach of fiduciary duty claim which might not be available under his claim for denial of benefits is reinstatement to his former position with back pay.  While reinstatement with back pay is a recognized form of equitable relief, it would not be "appropriate relief" in this case because Plaintiff's employment agreement could be terminated by Defendants for *any* reason upon thirty days' notice. (Pl.'s Br. Supp. Mot. Remand, Ex. 1 at 3.) In such event, however, Plaintiff would receive the benefits set out in his employment agreement.

The grant of summary judgment as to Plaintiff's breach of fiduciary duty claim does not foreclose his ability to gain equitable relief. Because ERISA Section 510 does not contain any remedial provisions, it provides that the enforcement of that section will be under "[t]he provisions of section 1132 of this title [ERISA sec. 502]." 29 U.S.C. § 1140.  As a result, the applicable provision would be Section 1132(a)(3), the same section under which Plaintiff asks for equitable relief in his breach of fiduciary duty claim.  Therefore, if Plaintiff succeeds at trial under his Section 510 claim, he will still have the ability to gain equitable relief. *See Folz v. Marriott Corp.,* 594 F.Supp. 1007, 1016 (W.D.Mo.1984).

F.2d 231, 237 (4th Cir.1991) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980)).

■ To establish a claim under Section 510, a plaintiff must prove that the employer took the offending action with the specific intent to interfere with the plaintiff's plan benefits. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277–78 (4th Cir. 1995); *Conkwright*, 933 F.2d at 239. Because discriminatory intent is rarely proven by direct evidence, however, courts apply the *McDonnell Douglas* framework, developed for Title VII discrimination cases, to ERISA discriminatory discharge claims based on circumstantial evidence. *See Conkwright*, 933 F.2d at 239. Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000). If the employer carries this burden, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination. *Id.* In making the determination of whether the plaintiff has met his burden of showing pretext, "[t]he question is not whether [the defendants] exercised prudent business judgment, ... but whether [the plaintiff] has come forward to refute the articulated, legitimate reasons for his discharge. In this regard, [the plaintiff] must do more

than challenge the judgment of his superiors through his own self-interested assertions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986); *see also Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). To survive summary judgment, the plaintiff must produce sufficient evidence to raise a genuine issue of material fact as to whether the legitimate, non-discriminatory reasons articulated by the employer are a pretext for discrimination. *See Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir.2000) (affirming summary judgment where plaintiff failed to forecast any evidence that cast doubt on the veracity of defendant's proffered explanation that plaintiff was terminated as part of a company-wide reduction in force); *Conkwright*, 933 F.2d at 239 (affirming summary judgment where the plaintiff's only evidence of pretext was the fact that his termination saved the defendant money).

■ Plaintiff can establish his *prima facie* case upon proof of the following elements: (1) that he is a member of the protected class, *i.e.*, a participant in an employee benefit plan; (2) that he was qualified for the job; and (3) that he was discharged "under circumstances that give rise to an inference of discrimination." *Henson*, 61 F.3d at 277; *see also Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 135 (7th Cir.1997). Viewing the facts in the light most favorable to the Plaintiff in this summary judgment proceeding, Plaintiff has alleged each of these elements. He was a participant in each of the employee benefit plans. He was qualified for the position of COO and was reasonably performing his job. Lastly, Plaintiff was discharged "for cause" although Plaintiff contends that he was reasonably performing his job and that Defendants' reasons are merely a pretext for their unlawful motive to deny his benefits.

The burden now shifts to Defendants to produce legitimate, non-discriminatory reasons for Plaintiff's termination. In response, Defendants have produced numerous legitimate reasons for terminating Plaintiff "for cause." Defendants sent Plaintiff a memorandum in August 1999 which gave the Plaintiff a list of things he was not to implement or do without first obtaining the approval of Jim Clark or Jon Wright. Defendants then claim that by August 2000 Plaintiff had constantly taken actions listed in the memorandum without obtaining prior approval from either Clark or Wright.

Defendants' main argument for terminating Plaintiff, however, seems to be Plaintiff's providing confidential information to individuals outside the company in violation of Section 5.1.2 of the Agreement. This violation of explicit company policy allegedly occurred when Plaintiff had a telephone conversation with Clark in August 2000. Plaintiff indicated in that conversation that he planned to share information regarding Young Phillips inventory with Gene Johnson, an attorney representing the former shareholders of Young Phillips, the Phillips family members. Furthermore, when Clark told him not to act and to let all such information be handled between the attorneys, Plaintiff indicated to Clark that he intended to disregard his direct instructions and share the confidential information. When Clark determined that Plaintiff was going to disobey direct instructions and share confidential information with an opposing lawyer, "this clearly represented a legitimate reason for the termination of Plaintiff's employment, especially considering the other revelations that Mr. Wright and Mr. Clark had been recently discovering regarding Plaintiff's disregard of their written instructions." (Defs.' Br. in Support of Summ. J. at 20.)

Defendants have articulated legitimate reasons for terminating Plaintiff. Therefore, the onus of proof shifts back to Plaintiff to prove that he was intentionally discharged for the purpose of interfering with his plan benefits. In *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court explained the plaintiff's burden in rebutting the defendant's explanation. The question in *Reeves* was "whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." *Id.* at 137, 120 S.Ct. 2097. The Supreme Court held that in appropriate circumstances "a plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant's] asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097; *see also id.* at 147, 120 S.Ct. 2097 (reiterating that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the [defendant's] explanation"). Once a plaintiff has established a *prima facie* case and shown the defendant's explanation to be false, the plaintiff need not submit additional evidence of discrimination unless "no rational fact finder could conclude that the action was discriminatory." *Id.* at 148, 120 S.Ct. 2097. *See also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir.2001).

Defendants seem to rely heavily on Plaintiff's alleged violation of Section 5.1.2 to support their claims that he was discharged "for cause." Plaintiff, however, successfully rebuts this allegation with specificity in his affidavit. (Pl.'s Ex. Opp'n Defs.' Mot. Partial Summ. J., Ex. 1 at 6 ¶ 23–7 ¶ 26.) First, Plaintiff states that

Jon Wright continually placed him in the position of providing information or documents to the attorneys representing the interests of GSI and the Phillips family since there were numerous issues yet to be addressed in order to carry out the acquisition contract over the next year. *Id.* at ¶ 24. Secondly, Plaintiff states that Jim Clark was mistaken when referring to the incident over the telephone and that it was simply the culmination of differences between Plaintiff and Clark over interpretation as to the treatment of inventories under the acquisition contracts between Young Phillips and GSI. Plaintiff claims that in the spring of 2000 his inventory manager told him that Clark was directing that some of the inventory be moved and set aside according to Clark's interpretation of the contract. Plaintiff believed that his job was to ensure inventory was properly managed and losses minimized, so he requested a report on what items were involved as a matter of routine analysis. Plaintiff then heard that the GSI data processing manager was refusing to allow Plaintiff's manager to obtain reports on the orders of Jim Clark. Plaintiff then called Clark and Clark explained his interpretation of the contract. Plaintiff claimed that he did not argue but stated that at some point Gene Johnson and Ben Phillips would also need to inspect these reports to determine their position and interpretation. Plaintiff states that it was at this point that Clark became very agitated and questioned what Plaintiff was doing in talking to Johnson and Phillips about this. Clark then said that Jon Wright wanted all discussions on inventory or any other contract issues to go through attorneys. Plaintiff responded that it was the first he had heard of it and that he would be happy to discuss the issue with Wright. Plaintiff states that at no point did he ever say he would give reports to Gene Johnson or Ben Phillips. More importantly, Plaintiff could not have done so because Clark controlled all of the reports at issue. Subsequently, the issue was never raised nor discussed by Wright or Clark at any point until Plaintiff was terminated on August 23, 2000. Lastly, Gene Johnson in his deposition seems to support Plaintiff's claims of being a loyal employee to GSI.

Defendants' further explanations for firing Plaintiff "for cause" seem to be little more than disputes over the interpretation of limitations on Plaintiff's authority under the Agreement. Defendants seem to claim that Plaintiff deserved to be terminated "for cause" by his "willful violation of specific and lawful directions" and his "failure or refusal to perform the services" required under the Agreement. However, Plaintiff contends that he "excelled in his performance" of his duties throughout the year and that neither Wright nor Clark informed him at any point that they had any problem with his performance. Plaintiff also claims that he has consulted his own resources, including a yearly call log, and that they provide ample evidence that he was in constant communication and contact with both Wright and Clark, constantly seeking their approval on all types of decisions, large or small. Plaintiff further states that he saw both Wright and Clark on a regular basis, seeing Clark at least several times a month, and that they would review records together and discuss the operations of Young Phillips and GSI at that time.

At this point, the court cannot decide who is telling the truth. A summary judgment proceeding is "not the proper forum for assessing the relative weight of conflicting evidence." *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n. 10 (4th Cir.1987). Because at this stage the court views the facts in the light most favorable to Plaintiff, the court must assume that Plaintiff's version

of the facts is correct and therefore that Defendants' explanation for terminating Plaintiff is false. *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 259 (4th Cir.2001).

Because Plaintiff has established a *prima facie* case and proffered evidence that Defendants' explanations are false, Plaintiff need not submit additional evidence of discrimination unless "no rational fact finder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. Plaintiff has offered, however, some additional evidence which might bolster a reasonable inference that Defendants terminated Plaintiff in violation of Section 510. Plaintiff points to Jim Clark's deposition as evidence which supports a finding that Defendants were simply concocting a way to fire him "for cause" in order to avoid their monetary obligations to Plaintiff. Clark testified that, at the time of the acquisition of Young Phillips by GSI, he questioned Wright about assuming Plaintiff's contracts since none of GSI's employees, including Clark, had employment contracts. (Pl.'s Ex. Opp'n Defs.' Mot. Partial Summ. J., Ex. 7 at 126, 11. 2–12.) Also Clark said that he advised Wright to take Plaintiff but to void the contracts and let Ben Phillips "eat [them] as part of the deal" due to the "stiff terms." (*Id.* at 126–27.) Clark showed concern that, if Plaintiff was not working out due to "lack of performance," Defendants "couldn't get rid of him just based on that." (*Id.* at 131.) Lastly, Clark was concerned with Plaintiff's "rich" Executive Salary Continuation Plan. (*Id.* at 133–34.) These statements combined with Plaintiff and Clark's tenuous relationship and the possible falsity of Defendants' explanations provide more than enough reason to deny summary judgment on Plaintiff's Section 510 claim.

In this case, Plaintiff has proffered sufficient evidence to show that Defendants' explanations are false. Plaintiff has also submitted additional evidence of discrimination. As a result, a rational fact finder could conclude that Defendants' explanations are a pretext for interfering with Plaintiff's benefits.

## CONCLUSION

For the reasons set forth above, the court will grant Defendants' summary judgment motion as to Plaintiff's breach of fiduciary duty claim. Defendants' motion for summary judgment as to Plaintiff's wrongful interference claim will be denied.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion for summary judgment [Doc. # 41] is **GRANTED** as to Plaintiff's breach of fiduciary duty claim, and that claim is **DISMISSED**.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment [Doc. # 41] is **DENIED** as to Plaintiff's wrongful interference claim.