Joy E. PHILLIPS, et. al., Plaintiffs

v.

MARITIME ASSOCIATION—I.L.A. LOCAL PENSION PLAN, et. al., Defendants

No. CIV.A. 1:99CV181.

United States District Court, E.D. Texas, Beaumont Division.

Oct. 5, 2001.

---

**51.** W.C. Mills, et al., *A Microprocessor Based High Speed Modem*, colloquium on *A Review* of *Modern Techniques*, January 14, 1981.

Christopher Matthew Parks, Parker & Parks, Port Arthur, TX, Jay W. Eisenhofer, Abbott A. Leban, John Kairis, Grant & Eisenhover, Wilmington, DE, for Plaintiff.

John H. Smither, Vinson & Elkins, Houston, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court are Defendants' motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment, and the court having reviewed the motions and responses on file, is of the

opinion that partial Plaintiffs' summary judgment be GRANTED, and that Defendants' motion for summary judgment be DENIED, in accordance with this memorandum.

## I. Introduction

This case involves the question of an ERISA plan's ability to recoup benefit overpayments by drastically reducing monthly payments, when the overpayments were the result of a breach of fiduciary duty. Joy Phillips, Ester Doublin, Marie Gutierrez, and Ora Dell Davis join as plaintiffs and seek partial summary judgment from the defendants. Defendants also seek summary judgment permitting recoupment drastically reducing the monthly payments by the Plan to each of the Plaintiffs.

## II. Factual Background

The defendants are the Maritime Association—I.L.A. Local Pension Plan ("Plan"), the Plan's Board of Trustees, certain other trustees, and former Plan Administrator, Shirley H. Hunt ("Hunt"). The Plan is a multi-employer, defined benefit pension plan, governed by ERISA. The four Plaintiffs in this case are divorced older women, whose ex-husbands are current and former employees in the longshore industry and participants in the Maritime Plan. Plaintiffs' former spouses were active employees at the time of their respective divorces. Each woman submitted her domestic relations order ("DRO"), and other required documents to the Plan. The general purpose of each DRO was to divide the community assets 50–50, including the men's pension benefits under the Plan. The Plan determined that the DROs qualified under ERISA as "qualified domestic relations orders," or QDROs. The Plan represented, in the form of set dollar amounts, that each Plaintiff would receive monthly retirement benefits under these QDROs. Through their divorce attorneys, each of the Plaintiffs finalized her divorce

based on these represented amounts. The divorce courts entered the orders, and for up to seven years Plaintiffs have based their personal finances on these amounts represented in their QDROs.

Defendant Shirley H. Hunt ("Hunt") was Administrator of the Plan from 1987 until April 2000, the time period during which the Plaintiffs submitted their DROs. Hunt was responsible for first reviewing the DROs to determine whether the Plaintiffs met the statutory requirements for a QDRO. If she could not make this determination, she forwarded the DROs to Plan counsel for advice. Hunt should have also forwarded all DROs to the Plan actuary, William H. Mercer, Inc. However, Hunt failed to submit all DROs to the actuary and did not submit any of the Plaintiffs' DROs. Hunt also failed to allow the actuary to check the QDROs before initiating payment to the beneficiaries. These failures prevented the QDROs from being adjusted to account for the alternate payee's early receipt of benefits, any age difference between the alternate payee and the former spouse, and the present value of any employer subsidy for early retirement. Hunt's actions were even less explicable in light of a letter sent to the Plan by Plan Counsel, which outlined procedures that should be followed when determining whether a DRO was qualified. Counsel, in fact, advised the Plan to implement these procedures in 1986, but the Plan failed to do so. Hunt's actions resulted in incorrect benefit amounts being paid to several alternate payees, including Plaintiffs. The Plaintiffs began receiving monthly benefits based on these QDROs, which state specific dollar amounts, and by all representations were the final settlements of the amount Plaintiffs would receive each month. The dollar amounts in these QDROs were not actuarially correct because of Hunt's failure to allow an actuary

to review the proposed QDROs before qualifying them under the Plan.

The Plan paid the monthly benefits to each of the beneficiaries for several years before Davis' former spouse applied for retirement in April 1996. Hunt finally forwarded the appropriate documents to the Plan actuary to determine how much Davis' former spouse should receive, and the discrepancy was discovered. The actuary then wrote a letter to Hunt stating that the Plan had overpaid the plaintiff and that Ora Davis should have received $104.10 commencing October 1, 1992, payable for life. Hunt then consulted the actuary and plan counsel and was advised to submit all of the QDROs for review. Upon the findings of the actuary, the Plan began deducting the claimed indebtedness amortized over the alternate payee's life expectancy. This offset resulted in major reductions in the monthly benefits that Plaintiffs had been receiving. The Plan began the deductions on January 1, 1997, for three of the plaintiffs. According to the Plan actuary, Joy Phillips' monthly benefit should have started at $253.84 and increased to $395.24 on April 1, 1993, and, to recoup overpayments, should be reduced from $543.82 to $233.21 a month. The actuary calculated Esther Doublin should have been receiving $81.31 with an increase to $93.96, and hence, recommended reducing her monthly benefit from $400.09 to $21.10 a month. It was calculated that Marie Gutierrez's benefit should have been $293.00, and hence, should be reduced from $614.50 to $182.62. As discussed above, it was calculated that Ora Davis' benefit should have been $104.10 and should be reduced from $384.85 to $16.05; this action was taken on June 1, 1996. To recoup overpayments resulting from the Plans actions, the Plan reduced Plaintiffs' monthly benefits significantly below even what Plaintiffs would have been receiving if Hunt had properly submitted the QDROs to an actuary before initiating payment.

## III. Analysis

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 478, 112 S.Ct. 2072, 2088, 119 L.Ed.2d 265 (1992); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

In this case Defendants filed a motion for summary judgment, and the Plaintiffs filed a cross-motion for partial summary judgment. However, the mere filing of cross-motions for summary judgment does

not warrant the entry of such judgment unless there is no genuine issue as to any material fact. *Volunteer State Life Ins. Co. v. Henson,* 234 F.2d 535, 537 (5th Cir.1956).

## B. Standing

■ ERISA § 502(a)(1)(B) states: "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ..." 29 U.S.C. § 1132(a)(1)(B). As QDRO recipients, Phillips, Doublin, Gutierrez, and Davis have standing to bring these claims. *Boggs v. Boggs,* 520 U.S. 833, 847, 117 S.Ct. 1754, 1763, 138 L.Ed.2d 45 (1997) ("In creating the QDRO mechanism Congress was careful to provide that the alternate payee ... is to be considered a plan beneficiary."); *see also* 29 U.S.C. § 1056(d)(3)(J).

## C. Standard of Review

■ Defendants argue that an arbitrary and capricious standard should be used by this court to determine whether the corrective measures employed by the Defendants were reasonable. The Plan granted the Trustees the ability to establish rules for the administration of the Plan and vested them with discretionary authority. However, the Plaintiffs argue that a de novo standard should be applied because the case involves the interpretation of a QDRO. The law in this Circuit is clear. *Matassarin v. Lynch,* 174 F.3d 549 (1999). When a plan grants discretion to the administrator, a court will overrule the administrator's interpretation only if it is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989); *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637–39 (5th Cir.1992). The arbitrary and capricious review amounts to an abuse

of discretion standard. *McDonald v. Provident Indemnity Life Ins. Co.,* 60 F.3d 234, 236 (5th Cir.1995). The Maritime plan grants discretionary authority to construe Plan terms to the administrator, so Hunt's interpretation of Plan terms will be reviewed for an abuse of discretion.

■ Such deference is not afforded to plan administrators interpretations of QDROs. A court reviews de novo a plan administrator's legal conclusions regarding the meaning of a contract or statute. *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1100 (5th Cir.1990). The QDROs, unlike the Plan, are separate, judicially approved contracts between Phillips, Doublin, Gutierrez, and Davis and their respective ex-spouses, which the Plan administrator has no special discretion to interpret. Although a plan administrator is allowed the discretion to determine whether an agreement constitutes a QDRO under the plan, courts otherwise review de novo a plan administrator's interpretation of the meaning of a QDRO. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 114 (3d. Cir.1994) (finding that a district court did not err by reviewing de novo the plan administrator's construction of a divorce agreement, which invoked issues of contract interpretation under the Agreement and not the plan).

Congress created the QDRO structure when it amended ERISA with the Retirement Equity Act ("REA") of 1984. The REA enhanced ERISA's protection of divorced spouses and their interest in retirement funds earned during marriage. *See Boggs,* 520 U.S. at 848, 117 S.Ct. at 1763. "The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income." *Id.* at 854, 117 S.Ct. at 1767. Thus, the REA amendments require each pension plan to

provide for "the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). Furthermore, "[e]ach plan shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders." 29 U.S.C. § 1056(d)(3)(G)(ii). Therefore, the Plan's interpretation of the QDRO will be reviewed under the de novo standard.

## D. Discussion

 At the heart of this case is the reasonableness of Maritime's recalculation of the Plaintiff's benefits and Maritime's ability to recoup those benefits. This is not a discussion of the ability of ERISA plans to recoup benefit overpayments. Indeed ample case law demonstrates that plans can recoup.[1] *See Nesom v. Brown and Root, USA., Inc.,* 987 F.2d 1188 (5th Cir.1993); *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073 (5th Cir.1990); *Calloway v. Pacific Gas & Electric Co.,* 800 F.Supp. 1444 (E.D.Tex.1992). ERISA does not specifically address the ability of plans to recoup, however, the Supreme Court has directed that a body of common law be developed to fill in the gaps of ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110–11, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). When a plan does not specifically allow for recoupment, but nevertheless it does so, it exercises extra-statutory devices to do so. By reducing the Plaintiffs' monthly benefits to recoup past overpayments, Maritime has availed itself of the common law remedy of restitution. Hence, the focus of this

opinion is whether Maritime was entitled to use this equitable doctrine of restitution. The resolution of this question is dispositive of the case, and the court does not further address issues not necessary to this determination.

 When applying an equitable doctrine for the purposes of recoupment, it is critical to consider the circumstances surrounding the overpayments. It is also important to remember that Maritime is the party that exercised the equitable doctrine, not the Plaintiffs. The structure of this discussion, then, is to determine whether Maritime was entitled to restitution. When considering the specific facts of this case, the breach of fiduciary duty by Hunt, the Plaintiffs' resulting change of position, the balance of equities, and the principles of restitution, the Plan is not entitled to recover those overpayments. As the court will explain below, consideration of the equities in this case and ERISA's guiding principles has led the court to conclude that restitution is not an appropriate remedy.

 Hunt breached her fiduciary duty to the Plaintiffs. The Fifth Circuit characterizes the duty of plan administrators and trustees as fiduciary and establishes that the concept of fiduciary duty is to be broadly construed within the context of ERISA. *Wright v. Nimmons,* 641 F.Supp. 1391, 1402 (S.D.Tex.1986); *Donovan v. Mercer,* 747 F.2d 304, 308 (5th Cir.1984). The fiduciary duty of care involved in ERISA is rooted in negligence principles and is an affirmative duty. *Wright,* 641 F.Supp. 1391, 1402. Therefore, the fiduciary should exert at least that duty of care that a reasonably pru-

---

1. However, much of the precedent allowing ERISA plans to recoup has to do with benefit off-sets, which are allowed when the beneficiary receives overlapping funds from another source. *See Nesom v. Brown and Root, USA.,*

*Inc.,* 987 F.2d 1188 (5th Cir.1993) (holding set-off provision that integrates benefits from several sources to achieve an agreed upon level is not repugnant to or limited by a state court order).

dent person would exert in his own affairs under like circumstances. In short, the fiduciary must exercise his position of trust so as, at the very minimum, not to harm the beneficiary as a result of his failure to exercise reasonable care. *Wright*, 641 F.Supp. 1391, 1402. The prudent person standard imposed by ERISA provides that the fiduciary shall discharge her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and *familiar with such matters* would use in the conduct of an enterprise of a like character and with like aims" 29 U.S.C. § 1104(a)(1). Hunt violated the prudent person standard imposed by Section 1104(a)(1) of ERISA. By: (1) failing to seek and follow the advice of Plan counsel that every DRO should be submitted to an actuary; (2) failing to submit the DROs to the Plan actuary; (3) failing to submit the QDROs to an actuary; and (4) representing to Plaintiffs that the stated amounts would be the amounts they received. Hunt did not discharge the duty of care that a reasonably prudent person would have in her own affairs. Hunt harmed the Plaintiffs by failing to exercise her duty of care as a fiduciary, especially when ERISA provides that the care should be that of someone familiar with such matters. Hunt violated the prudent person standard and thus breached her fiduciary duty.

Based on their rationale interpretation of the representations made by Hunt in qualifying and carrying out the QDROs, Plaintiffs had a change of position. These older women depended on the dollar amounts not only stated in the QDROs and by Hunt, but actually distributed to them for years, when planning the rest of their lives. They neither knew nor had reason to know that the monthly benefits were incorrect. Plaintiffs suffered, and continue to suffer as a result of Maritime's recoupment efforts.

The Plan has availed itself of the equitable doctrine of restitution by reducing the Plaintiffs monthly benefits below what they would have received under an appropriately administered plan in order to recoup past overpayments. Hence, an issue arises as to what amount the Plaintiffs should be receiving. Defendants argue that Plaintiffs are getting what they "should" receive each month; however, the very concept of recoupment is to reduce what would normally be paid in order to recover money by not having to pay it. Plaintiffs are receiving a much smaller amount each month than they would have been at this time had Hunt not breached her fiduciary duty. The issue then is not whether the Plaintiffs should be getting the specific amounts stated in the QDROs. Although Plaintiffs argue they should receive these amounts, the principles of ERISA dictate otherwise. The issue is will the Plaintiffs receive a corrected amount based strictly on the actuarially calculated amount at the time the QDROs were executed or will they receive an amount that includes a reduction for past overpayments. Hence, there is a difference between the corrected amount without deducting for Hunt's breach, and the recoupment amount. It would be too onerous for plans if they could not correct mistakes made by an administrator, and would run against the goals of efficiency and stability for the beneficiaries of the plan as a whole. This court does not go that far. Maritime may correct the amount paid each month. However, Maritime was not entitled to further reduce the corrected amounts to reflect past benefit overpayments because the balance of equities weigh against that self-help remedy.

■ Several factors weigh against restitution. First, the breach occurred through no fault of the Plaintiffs. Indeed, Plaintiffs and their attorneys tried to en-

sure no mistakes were made. And while fault does not necessarily preclude restitution, a party's culpability is an appropriate equitable consideration. *Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F.2d 1176, 1186 (3rd Cir.1991). Courts have refused to allow restitution in similar circumstances. *See e.g., Agathos v. Starlite Motel,* 60 F.3d 143 (3rd Cir.1995) (holding welfare fund was not entitled to reimbursement for benefits it paid to employee who was ineligible to receive benefits, since damages at issue flowed from fund's failure to adequately police employer's account); *Burger v. Life Ins. Co. of North America,* 103 F.Supp.2d 1344 (N.D.Ga.2000) (holding insurer waived its rights to recover overpayments); *Dandurand v. Unum Life Ins. Co. of America,* 150 F.Supp.2d 178 (D.Me.2001) (holding that equities did not weigh in favor of requiring participant to pay restitution for overpayment); *see also Rhorer v. Raytheon Engineers and Constructors, Inc.,* 181 F.3d 634 (5th Cir.1999) (holding summary judgment should not have been issued for administrator because a fact issue existed as to whether administrator waived a requirement). The court finds that the relative culpability in this case, particularly given the duty Hunt owed the Plaintiffs and the length of time it took to detect the overpayments, weigh against restitution. The court does not believe it would be equitable for the Plaintiffs to bear the weight of an error that Hunt could have prevented by upholding her duty as plan administrator and allowing an actuary to check the QDROs.

The balance of equities weighs in favor of disallowing Defendants to recoup the past overpayments. The overpayments were the result of more than just a mistake, they were the result of Hunt's breach of fiduciary duty owed to the Plaintiffs. Plaintiffs had no way of knowing that they were being overpaid. The overpayments in no way occurred through the fault of the Plaintiffs. Plaintiffs rationally planned their lives on the amounts stated in the QDROs and paid to them by the Plan each month for years, and as a result had a change of position. Additionally, this court does not decide whether other trustees may have breached their fiduciary duties, and it is possible that the Plan might recover from others responsible for this breach as well as Hunt. Therefore, limiting this decision to these four Plaintiffs, disallowing the Plan to engage in restitution does not put the corpus of the funds in jeopardy for plan members and their beneficiaries. The above factors combine to weigh against allowing Maritime to engage in recoupment.

There is no restitution in this matter because of the blatant breach of fiduciary duty. The initial breach was Hunt's failure to seek an actuary when calculating the Plaintiffs' monthly payment amounts. However, this court has not addressed possible further breaches by Hunt in trying to summarily cover her mistakes by recouping the overpayments over the life expectancy of the Plaintiffs, or the possible breaches of fiduciary duty by the Board and other trustees in rubber stamping Hunt's recoupment proposals. Therefore, in denying the recoupment efforts by the Plan as to the Plaintiffs, this court has not necessarily precluded the Plan from recovery. The Plan may seek recovery on behalf of its beneficiaries from Hunt, the Board, or other trustees that may be found liable to the Plan. Disallowing the Plan to recoup from Plaintiffs because of Hunt's blatant breach of fiduciary duty does not leave the Plan without remedy.

 From this time forward, each Plaintiff should receive the corrected amount. Hence, Phillips should start receiving $395.24 a month, payable for life with any appropriate adjustments. In addition, each Plaintiff should receive a re-

fund of the amount the Plan has incorrectly recouped from them. This amount should be based on the difference between the corrected amount and the recoupment amount as of the date of discovery of the error. For instance, the actuary calculated that when payment began on the QDRO, Phillips should have started receiving $253.84 with an increase to $395.24 on April 1, 1993. Instead, she received $543.82 a month until the mistake was discovered, and the Plan determined the corrected amount and began to recoup by only paying her $233.21. Therefore, Phillips should receive the difference between what she should have been receiving and what the Plan paid her in an effort to recoup, or the difference between $233.21 and $395.24 for the period which started January 1, 1997, and will end with the last payment of $233.21 before this order takes effect. This total represents the amount Maritime incorrectly recouped from the Plaintiffs. As Maritime chose to reflect the time value of money in the form of interest when recouping the overpayments, calculation of such is appropriate when returning this amount. Also, Plaintiffs have the choice of receiving the above determined recoupment amount restored to them in a lump sum payment, or having the Plan determine monthly payments and adding them to what they will begin receiving upon issuance of this opinion-the $395.24 for Phillips. Plaintiffs will begin receiving the corrected amount and will have the improperly recouped amount restored to them.

 Again, this court does not find that restitution is improper in the ERISA context. Indeed, in passing ERISA, Congress expected "a federal common law of rights and obligations under ERISA" would develop. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954, 103 L.Ed.2d 80

(1989). Restitution is part of this body of law, and is governed by federal common law in the shadow of ERISA. *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Pathology Lab. of Arkansas*, 71 F.3d 1251, 1254 (7th Cir.1995). However, while some cases hold restitution is an appropriate equitable remedy when done in accordance with the plan, this court concludes that based on the specific facts of this case, equity weighs against the Plan availing itself of restitution.

## CONCLUSION

Given the equitable factors discussed above, this court denies Defendants' motion for summary judgment, and grants in part Plaintiffs' motion for partial summary judgment. The court therefore,

**ORDERS**, Maritime to cease deducting the recoupment amount from what would be the actuarially correct amount had the overpayments not occurred. The court further,

**ORDERS**, Maritime to refund the difference between the actuarially correct amount had the overpayments not occurred and the amount Maritime has paid Plaintiffs in an effort to recoup the past overpayments, with interest.

Plaintiffs' counsel shall submit a motion for final judgement that sets these amounts and the method in which the recouped amount will be restored to the Plaintiffs by November 2, 2001.