UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-1744**

———————————

JIMMY ADAMS; CHRISTOPHER BROOKS ADDINGTON;
MICHAEL ADKINS; JERRY BAIRD; MICHAEL A.
BLEDSOE; ROBERT BLEDSOE; KIM BOGGS; HARRY
BOONE; GLENDA BRADY; WILLIAM BREEDING; JOHN
BROWNING, JR.; JOHN BROWNING, SR.; BILLY
BULLION; BENNETT S. CANTRELL; BILLY CANTRELL;
FLOYD CANTRELL; FREDDIE CANTRELL; ISAAC W.
CANTRELL; JOHN W. CANTRELL; THELMER CANTRELL;
DONALD CHILDRESS; DONALD R. CLARK; GREG CLARK;
MICHAEL CLARK; RANDALL A. CLARK; JAMES E.
COOKE; CLAUDE COX; VERNUS A. CULBERTSON; TEDDY
DEAN; CARL T. DOTSON; DAVID ELAM; WILLIE M.
FALIN; FRANK FARMER; JOHNNY W. FARMER;
HEZEKIAH FRANKLIN; DAVID M. FREEMAN; LARRY
GILLIAM; ROY R. GILLIAM; EDWARD GRAHAM; DONALD
GREEAR; DENVER HALL; DANE HAMILTON; SCOTTY
HAMILTON; DANNY HAYES; CLEGG HESS; HOMER HILL;
THOMAS HILLMAN; RICHARD HUGHES; JERRY HYLTON;
GREG IRESON; ARTHUR W. JENKINS; ROGER J.
JONES; ROY JONES; DON KENNEDY; DAVID KING;
CHARLES LANE; RONALD LARGE; ATLON LAWSON;
RONNIE L. LAWSON; TIM LAWSON; JOHN LIVINGSTON;
ROBIN LOVELL; WOODROW LOVELL; DAVID G.
MCCONNELL; DWAYNE MCCONNELL; HENRY MCFADDEN;
GEORGE L. MEADE; HOLLY P. MEADE; IVAL MEADE;
RICKY MEADE; DANNY S. MOORE; ROGER D. MORGAN;
DONALD E. MULLINS; DONALD M. MULLINS; FRANKLIN
D. MULLINS; GARY MULLINS; JOHNNY R. MULLINS;
OTTIS MULLINS; RANDY MULLINS; RONNIE MULLINS;
GERALD NEWTON; CHARLES OSBORNE; JEFFREY PETRO;
HOMER PHIPPS; FREDDY POWERS; DENNIS RASNIC;
BOBBY REDMAN; LAWRENCE REEVES; CHARLES
RICHARDSON, JR.; DUSTY ROBINSON; JIMMY ROSE;
MITCHELL SALYERS; DENVER SANDERS; RICKY
SHELTON; RONNIE SLEMP; KENNETH SLUSS; DONALD
STAIR; ROBERT STAPLETON; JEFF SUMMERS; WILLIS
SURRETT, JR.; GARY SWINEY; DANNY TAYLOR; JUDY
THACKER; PHIL THACKER; WILLIE THACKER; JERRY
TIGNOR; RAY WATSON; BOBBY WHEELER; CLARENCE

WHISENHUNT; MIKE WHITAKER; JERRY WHITE; GARY WILLIAMS; ARTHUR WILSON; RALPH WILSON, JR.; DENVER WINEBARGER; ROBERT SMALLWOOD; WINSTON RICHARDSON; MICHAEL HOPKINS; KENNETH MEADE; TERRY MITCHELL; MICHAEL BOGGS; RAY TAYLOR; JACK BLANTON; DONALD RATLIFF,

Plaintiffs - Appellants,

and

MARTIN JESSEE; JAMES W. RAY; SAM ADKINS; DENNIS A. CANTRELL; JEFF FRANKLIN; TRENTON MULLINS; DAVID MCCARTY,

Plaintiffs,

versus

THE BRINK'S COMPANY; PARAMONT COAL CORPORATION; THE BRINK'S COMPANY PENSION-RETIREMENT PLAN; ADMINISTRATIVE COMMITTEE FOR THE BRINK'S COMPANY PENSION-RETIREMENT PLAN,

Defendants - Appellees.

---

**No. 06-1770**

---

JIMMY ADAMS; CHRISTOPHER BROOKS ADDINGTON; MICHAEL ADKINS; JERRY BAIRD; MICHAEL A. BLEDSOE; ROBERT BLEDSOE; KIM BOGGS; HARRY BOONE; GLENDA BRADY; WILLIAM BREEDING; JOHN BROWNING, JR.; JOHN BROWNING, SR.; BILLY BULLION; BENNETT S. CANTRELL; BILLY CANTRELL; FLOYD CANTRELL; FREDDIE CANTRELL; ISAAC W. CANTRELL; JOHN W. CANTRELL; THELMER CANTRELL; DONALD CHILDRESS; DONALD R. CLARK; GREG CLARK; MICHAEL CLARK; RANDALL A. CLARK; JAMES E. COOKE; CLAUDE COX; VERNUS A. CULBERTSON; TEDDY DEAN; CARL T. DOTSON; DAVID ELAM; WILLIE M. FALIN; FRANK FARMER; JOHNNY W. FARMER; HEZEKIAH FRANKLIN; DAVID M. FREEMAN; LARRY

2

GILLIAM; ROY R. GILLIAM; EDWARD GRAHAM; DONALD GREEAR; DENVER HALL; DANE HAMILTON; SCOTTY HAMILTON; DANNY HAYES; CLEGG HESS; HOMER HILL; THOMAS HILLMAN; RICHARD HUGHES; JERRY HYLTON; GREG IRESON; ARTHUR W. JENKINS; ROGER J. JONES; ROY JONES; DON KENNEDY; DAVID KING; CHARLES LANE; RONALD LARGE; ATLON LAWSON; RONNIE L. LAWSON; TIM LAWSON; JOHN LIVINGSTON; ROBIN LOVELL; WOODROW LOVELL; DAVID G. MCCONNELL; DWAYNE MCCONNELL; HENRY MCFADDEN; GEORGE L. MEADE; HOLLY P. MEADE; IVAL MEADE; RICKY MEADE; DANNY S. MOORE; ROGER D. MORGAN; DONALD E. MULLINS; DONALD M. MULLINS; FRANKLIN D. MULLINS; GARY MULLINS; JOHNNY R. MULLINS; OTTIS MULLINS; RANDY MULLINS; RONNIE MULLINS; GERALD NEWTON; CHARLES OSBORNE; JEFFREY PETRO; HOMER PHIPPS; FREDDY POWERS; DENNIS RASNIC; BOBBY REDMAN; LAWRENCE REEVES; CHARLES RICHARDSON, JR.; DUSTY ROBINSON; JIMMY ROSE; MITCHELL SALYERS; DENVER SANDERS; RICKY SHELTON; RONNIE SLEMP; KENNETH SLUSS; DONALD STAIR; ROBERT STAPLETON; JEFF SUMMERS; WILLIS SURRETT, JR.; GARY SWINEY; DANNY TAYLOR; JUDY THACKER; PHIL THACKER; WILLIE THACKER; JERRY TIGNOR; RAY WATSON; BOBBY WHEELER; CLARENCE WHISENHUNT; MIKE WHITAKER; JERRY WHITE; GARY WILLIAMS; ARTHUR WILSON; RALPH WILSON, JR.; DENVER WINEBARGER; ROBERT SMALLWOOD; WINSTON RICHARDSON; MICHAEL HOPKINS; KENNETH MEADE; TERRY MITCHELL; MICHAEL BOGGS; RAY TAYLOR; JACK BLANTON; DONALD RATLIFF,

                                        Plaintiffs - Appellees,

        and

MARTIN JESSEE; JAMES W. RAY; SAM ADKINS; DENNIS A. CANTRELL; JEFF FRANKLIN; TRENTON MULLINS; DAVID MCCARTY,

                                        Plaintiffs,

        versus

3

THE BRINK'S COMPANY; PARAMONT COAL CORPORATION; THE BRINK'S COMPANY PENSION-RETIREMENT PLAN; ADMINISTRATIVE COMMITTEE FOR THE BRINK'S COMPANY PENSION-RETIREMENT PLAN,

                                        Defendants - Appellants.

_____

Appeals from the United States District Court for the Western District of Virginia, at Big Stone Gap.  Pamela Meade Sargent, Magistrate Judge.  (2:02-cv-00044-PMS)

_____

Argued: September 27, 2007            Decided: January 11, 2008

_____

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge, and Raymond A. JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Jackson wrote the opinion, in which Chief Judge Williams and Judge Duncan joined.

_____

**ARGUED:** James A. Holifield, Jr., HOLIFIELD & ASSOCIATES, P.C. Knoxville, Tennessee, for Appellants/Cross-Appellees.  Robert Martin Rolfe, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees/Cross-Appellants.  **ON BRIEF:** William S. Lockett, Jr., KENNERLY, MONTGOMERY & FINLEY P.C., Knoxville, Tennessee, for Appellants/Cross-Appellees.  Elena E. Ellison, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees/Cross-Appellants.

_____

Unpublished opinions are not binding precedent in this circuit.

JACKSON, District Judge:

Appellants petition for review of the final order of the district court which disposed of most of Appellants' claims, denying additional pension benefits under the Pittston Plan. Appellees cross-appeal the district court judgment with respect to Christopher Brooks Addington, who succeeded on his breach of fiduciary duty claim. For the reasons that follow, we affirm.

I.

Appellants are former employees of Paramont Coal Corporation and current and/or former employees of the Pittston Company, a subsidiary of the Brink's Company. J.A. 101. In this action, Appellants seek benefit accrual service credit under the Pittston Plan for service with Paramont before Paramont's pension plans were merged into the Pittston Plan. (Appellees' Br., 4.)

In July 1986, Pyxis Resources, then a subsidiary of The Pittston Company ("Pittston"), acquired Paramont Coal Company ("Paramont"). JA 2962. In 2003, Pittston changed its name to the Brink's Company and the Pension-Retirement Plan of the Pittston Company and Its Subsidiaries changed its name to the Brink's Company Pension-Retirement Plan. JA 1798.

At the time of Paramont's acquisition by Pyxis, Paramont employees were participants in one of two identical defined-benefit pension plans: (1) the Salaried Employees' Pension Plan of Paramont

5

Coal Corporation or (2) the Hourly Employees' Pension Plan of Paramont Coal Corporation (collectively hereinafter referred to as the "Paramont Plans"). JA 1394, 1398. The Paramont Plans provided a maximum monthly retirement benefit of $350 for 20 years of service with Paramont. JA 2962-2963. All Paramont employees, regardless of their salary, earned the same retirement benefit for the same years of service. JA 2963.

The Paramont Plans remained in effect until January 1, 1989, when the Paramont Plans merged into the Pittston Plan. JA 2963. The Pittston Plan established a more generous benefit formula than the Paramont Plans. The Pittston Plan calculated benefits by multiplying a percentage of an average salary by the number of years of "Benefit Accrual Service." JA 176, 2964-65. Moreover, the Pittston Plan imposed no cap on these benefits. JA 176, 2964-65.

Exhibit G to the Pittston Plan, entitled "Special Provisions Applicable to Former Participants in the Pension Plans of Paramont Coal Corporation," states that the Paramont Plans shall be merged into the Pittston Plan and that "in connection with such mergers, the provisions of this Exhibit G shall apply, effective January 1, 1989, notwithstanding any provisions elsewhere in the Plan to the contrary."[1] JA 315, 2963.

---

[1]Exhibit G states in part: "The accrued pension benefit of each Paramont Participant under the Plan in respect of periods of service prior to January 1, 1989, shall be determined solely in accordance with the provisions of the Paramont Plan in which he was a participant, as in effect immediately prior to January 1, 1989,

6

Exhibit G further provides that vesting service under the Paramont Plans would count as vesting service under the Pittston Plan. JA 315. The district court found the language of Exhibit G to be clear and unambiguous and concluded that it does not provide for the inclusion of Appellants' years of service with Paramont prior to January 1, 1989, in the calculation of their retirement benefits under the Pittston Plan. JA 2964. There is no dispute that Appellants are receiving or are entitled to receive these retirement benefits as calculated.

Appellants argue that Pittston intentionally deceived them by saying, on numerous occasions beginning with Paramont's acquisition by Pyxis, that Paramont employees would receive benefit accrual service credit for their years of service with Paramont prior to January 1, 1989. (Appellants Br., 35.) However, based on the evidence presented at trial, the district court found that Pittston had not made misrepresentations.[2] JA 3049.

---

based solely on his 'Benefit Service' (as defined in such Paramont Plan) on December 31, 1988 or any earlier date on which the Paramont Participant ceases to be an employee of Paramont Coal Corporation..." JA 277-278,315.

[2]The district court concluded that the evidence does not in any way establish any concerted corporatewide effort to deceive current and former Paramont employees and that Michael Quillen, Kathy Fox, and Gerald Spindler did not tell plaintiffs that their years of service with Paramont prior to January 1, 1989 would be included in the calculation of their benefits under the Pittston Plan. JA 3049.

Two years after the acquisition of Paramont, all Paramont employees received a 1988 Employee Handbook that accurately stated that each was covered for pension benefits by only the Paramont Plans. JA 1296, 1308-20, 3047. Prior to the merger of the plans, every Paramont employee received two notices that they would not receive credit under the more lucrative Pittston Plan formula for their years of service with Paramont prior to January 1, 1989. JA 3047. These notices came in a November 10, 1988 letter from Randy Robinette, and a December 1988 article in the Paramont Pride, the company newspaper. JA 1334-34.1, 1350, 3047.

More than a year after Paramont employees received these accurate descriptions in 1988, Gerald Spindler, a Pittston Vice President who performed no routine functions with regard to the Pittston Plan, spoke at a meeting held at Clinch Valley College in 1990. JA 739, 769, 3009, 3065. The purpose of the meeting was to explain to the union-free side of Pittston's operation, which included more than just Paramont employees, how they could be affected by the new union contract. JA 739. A contract that settled a Pittston-UMWA coal strike had been settled the day before the commencement of the meeting. For the first time in the history of Paramont, the union-free work force was affected by the language of the contract. JA 739. At the meeting, Gerald Spindler, Scott Perkins, and Donnie Ratliff discussed the value of the Pittston/Paramont marriage, the management structure and growth

8

potential. JA 740. Spindler spoke about contracts, the commitment to remain union-free, and the importance of the Pyxis group. JA 740. Spindler also answered questions on a variety of subjects, one of them concerning the Pittston pension funds and Paramont years counting in the benefit calculation. JA 741. Although the purpose of the meeting did not specifically include discussing pension benefits, Spindler made his planned remarks, and when an employee subsequently inquired about their time of pension service, Spindler answered, "nothing will change." JA 741, 872, 3018. Spindler did not explain or elaborate and the district court found that Spindler made no misrepresentations. JA 872, 3018.

Additional accurate communications were distributed to all Paramont employees after the Clinch Valley College meeting. JA 1340, 3047-3048. Also, numerous witnesses at trial testified that they understood the relevant terms of the Pittston Plan. JA 3048.

However, over the years, a minority of employees received annual benefit statements that occasionally incorrectly estimated the amount of their projected pension benefits by including too many years of benefit accrual service under the Pittston calculation formula. JA 3049. Of the 836 annual benefit statements sent to Plaintiffs, 8% incorrectly estimated future retirement benefits. JA 2951, 3049. The annual benefit statements did not indicate how the estimate had been calculated and did not state that the employee's years of service with Paramont prior to January

9

1, 1989 were included in the calculation of their benefits under the Pittston Plan formula. JA 3057. Also, the annual benefit statements cautioned that the figures were estimates. JA 3057.

Appellants instituted this action on December 19, 2001, in the United States District court for the Eastern District of Tennessee seeking legal, declaratory and equitable relief for various claims against (1) Pittston, (2) Paramont, (3) the Pittston Plan, and (4) the Administrative Committee for the Pittston Plan ("Administrative Committee"). JA 99-107. Appellants asserted federal question jurisdiction in the district court pursuant to the general jurisdictional grant of 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* JA 102.

On September 6, 2002, Pittston filed a Motion for Summary Judgment, which the district court granted in part and denied in part by Memorandum Opinion and Order entered November 18, 2003. JA 497-504. On October 7, 2004, an Agreed Order was entered severing the claims of five of the then 123 plaintiffs to be tried to the court first. JA 505-507. The court entered its Findings of Fact and Conclusions of Law and Judgment in the trial of these five plaintiffs ("Initial Plaintiffs") on June 3, 2005. JA 2960-3079. On October 24, 2005, Pittston filed a Second Motion for Summary Judgment, seeking entry of summary judgment on the claims of the remaining 119 plaintiffs. The district court granted Pittston's

10

Second Motion for Summary Judgment by Memorandum Opinion and Order entered on March 17, 2006. JA 4667-4730. A Final Judgment was entered on June 2, 2006, disposing of all claims before the district court with the exception of the parties' cross motions for attorney's fees. JA 4737-4740.

Appellants are appealing the final order of the district court entered on June 2, 2006. Appellants timely filed a Notice of Appeal with the district court on June 26, 2006, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. JA 4741-4750. Appellants filed an amended Notice of Appeal on July 7, 2006. JA 4753-4758. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Appellants argue that the district court erred and challenge its judgment on four grounds. On cross-appeal, Appellees challenge the district courts judgment with respect to Christopher Brooks Addington. We address each argument in turn below.

## A.

Appellants first assert that certain Pittston employees were fiduciaries of the Pittston Plan in accordance with the Supreme Court's decision in Varity Corporation v. Howe, 516 U.S. 489 (1996). Specifically, Appellants aver that Gerald Spindler,

11

President of Pittston, acted as a fiduciary of the Pittston Plan when he spoke to a group of employees at a company-wide meeting regarding Plan benefits. Appellants also assert that Michael Quillen was delegated fiduciary responsibilities by the Administrative Committee and had apparent authority to speak on behalf of the Plan. In addition, Appellants assert that Donald Ratliff, Kathy Fox, Rhonda Miller and Eddie Needy were fiduciaries of the Pittston Plan. The Court disagrees.

The United States Supreme Court has recognized the rights of an individual participant to sue a person acting as a fiduciary under an ERISA plan for breach of fiduciary duty, and to seek relief pursuant to 29 U.S.C. § 1132(a)(3). Varity Corp., 516 U.S. at 489. In order to establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show: 1) that a defendant was a fiduciary of the ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan. Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 379-380 (4th Cir. 2001)("Griggs I"); Blair v. Young Phillips Corp., 235 F. Supp. 2d 465, 470 (M.D.N.C. 2002).

A "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary

12

control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. Varity, 516 U.S. at 489 (quoting ERISA § 3(21)(A)). Fiduciary status is not an all-or-nothing concept. The inclusion of the phrase "to the extent" in 29 U.S.C. § 1002(21)(A) means a party is a fiduciary only as to the activities which bring the person within the definition. Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 60-61 (4th Cir. 1992). When determining whether a party is a fiduciary, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Id. A court is required to examine the relevant documents to determine whether the conduct at issue was within the formal allocation of responsibilities under the plan documents and, if not, ascertain whether, in fact, a party voluntarily assumed such responsibility for the conduct at issue. Coleman, 969 F.2d at 61; Phelps v. C.T. Enters., Inc., 394 F.3d 213, 219 (4th Cir. 2005).

In Varity, the Supreme Court concluded that based on the factual context in which the statements were made as well as the plan-related nature of the activity engaged in by those who had plan-related authority to do so, there was sufficient support for the legal conclusion that Varity was acting as a fiduciary. Varity, 516 U.S. at 503. The Court emphasized that "conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued

13

participation, would seem to be an exercise of a power 'appropriate' to carrying out a plan purpose." Id. at 502. Moreover, the court noted that "other documents came from those within the firm who had authority to communicate as fiduciaries with plan beneficiaries." Id. at 503. Contrary to Appellants' assertions, the specific context for the Pittston Employees' statements in this case significantly differ from that which the Supreme Court recognized in Varity.

Pittston was both employer and administrator for the benefit plan. However, not all of Pittston's business activities involved plan management or administration. See id. The district court held that when the statements were made regarding employee benefits, Pittston employees were not acting as "fiduciaries" as well as "employers." In reviewing this legal conclusion, we give deference to the factual findings of the district court, recognizing its comparative advantage in understanding the specific context in which the events of this case arose. See id. The Court will examine the specific factual context of the alleged misrepresentations to determine whether each individual was a fiduciary.

Appellants assert that Gerald Spindler was a fiduciary. However, the evidence reveals that Spindler had no responsibilities with respect to the Pittston plan. Spindler, in addition to Quillen, Fox, Robinette, Miller and Needy possessed no discretionary authority to alter the terms of the Pittston Plan or

14

to determine eligibility for benefits or the amount of benefits a participant was entitled to under the Pittston plan. JA 3065. Despite this, Appellants assert that when Spindler reassured Paramont employees that their Paramont time would be used for calculating benefit accrual service under the Pittston Plan he was acting as a fiduciary. (Appellant's Br., 38.) The Court disagrees.

In Varity, the Supreme Court focused on the purpose of the meeting and the actions of the parties. Specifically, the Court emphasized that offering beneficiaries detailed plan information in order to help them decide whether to remain with the plan is essentially an exercise of a power "appropriate" to carrying out an important plan purpose. Moreover, in Varity the materials used at the meeting came from those at the firm with authority to communicate as fiduciaries with beneficiaries. Varity, 516 U.S. at 502. Here, the circumstances of the Clinch Valley College meeting were different.

Unlike the meeting in Varity, the purpose of the Clinch Valley College Meeting was not to offer beneficiaries detailed plan information in order to help them decide whether to remain with the plan. In fact, testimony in the district court reveals that Spindler's only communication regarding benefits was an answer to a question at the end of a meeting. JA 741. In addition, the evidence does not suggest that there were any benefit-related materials used at the meeting that came from those at the firm with

authority to communicate as fiduciaries with beneficiaries. See Varity, 516 U.S. at 502. The situation here can also be distinguished from Griggs I because Griggs suffered a very specific harm by relying on written documents from the Plan Administrator. See Griggs I, 237 F.3d at 374. It is evident that Spindler possessed no discretionary authority with respect to the Pittston Plan; moreover, he never offered detailed plan information with the intention of inducing a particular choice of plans. See Varity, 516 U.S. at 502.

Appellants also assert that Michael Quillen was delegated fiduciary responsibilities by the Administrative Committee and that he had apparent authority to speak on behalf of the Plan. (Appellants' Br., 39.) Appellants cite various documents and oral statements in support of this assertion. (Appellants' Br., 39-41.) However, the district court found that Quillen possessed no discretionary authority to alter the terms of the Pittston Plan or determine eligibility for benefits. Based on the evidence presented, this Court finds that this statement of fact is not clearly erroneous. Quillen testified that he never had any administrative responsibility, any control over, or any discretion regarding the Pittston Plan. JA 2991. Also, the documents and oral statements that Appellants cite to in order to establish that Quillen had authority were contained when Quillen was President of

16

Paramont and trustee of the Paramont Plans before their merger into the Pittston Plan. JA 2991.

Appellants additionally assert that Robinette, Ratliff, Fox, Miller, and Needy were all fiduciaries of the Plan because ERISA defines fiduciary status "functionally," where virtually any employee who communicates on benefits issues may be considered a fiduciary. (Appellants' Br., 41-42.) Appellants argue that the local human resource managers were delegated actual authority to answer questions regarding plan benefits. (Appellants' Br., 42.) Further, Appellants support their argument with the following assertions: (1) Kathy Fox trained Paramont's administrative personnel on the Pittston Plan so they could explain benefits to Paramont employees; (2) Donald Ratliff traveled to mine sites explaining Pittston plan benefits; (3) Randy Robinette was Paramont's Director of Human Resources and, in this capacity, sent various letters and memos to Paramont employees explaining the effects of the Pittston-Paramont merger. (Appellants' Br., 44.) Appellants aver that the aforementioned facts reveal that these persons were involved in the administration of the Plan and subject to fiduciary obligations. (Appellants' Br., 44.)

However, the district court found that Needy performed no functions with regard to the Pittston Plan and based on the evidence presented, the Court does not find this decision to be clearly erroneous. The district court also found that Fox,

17

Robinette, and Miller performed certain administrative duties for the Pittston Plan but lacked any discretionary authority to determine the eligibility for benefits or the amount of benefits to which a participant was entitled. JA 3065. Based on the evidence presented, the Court finds that these individuals were not fiduciaries.

Ministerial administrative acts are not fiduciary acts. Healthsouth Rehab. Hosp. v. Am. Natl' Red Cross, 101 F.3d 1005, 1009 (4th Cir. 1996) (stating that the limited role in processing claims and reading a computer screen to determine who is covered by a plan is not a fiduciary act). Even if Fox trained other employees to explain Pittston Plan benefits and Ratliff and Robinette explained plan benefits at mine sites and in writing, these actions fail to constitute the exercise of "discretionary authority or discretionary control respecting management" or administration of the Pittston Plan. 29 U.S.C. § 1002(21)(A)(2007).

The Court agrees that an employer/plan administrator does not exercise discretionary authority or control over the administration of the plan merely when employees tell each other about plan benefits. As in Coleman, the discretionary authority or responsibility which is pivotal to the statutory definition of "fiduciary" is allocated by the plan documents themselves. Coleman, 969 F.2d at 61. In examining the specific context of the alleged misrepresentations, the Court finds it significant that the

Pittston Plan administrators clearly and accurately communicated the plan benefits to the Paramont employees in writing. JA 307-3048. Based on the record, none of the alleged statements of the speakers deprived Appellants of any benefits to which they were entitled under the terms of the plan. All of the Appellants will receive the "contractually defined" benefits that their Plan provided.

In an effort to interpret ERISA's fiduciary duties, "courts may have to take account of competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." Varity, 516 U.S. at 497. In resolving this issue, the Court is sensitive to these competing purposes.

B.

Appellants contend that Pittston and other fiduciaries breached their fiduciary duty to Appellants by misrepresenting that their years of service under the Paramont retirement plans would be included in the calculation of benefit accrual service under the Pittston Pension Plan. (Appellants' Br., 45.) Appellants cite to the Varity holding to support the proposition that misleading plan

19

beneficiaries violates a fiduciary duty imposed upon plan administrators by ERISA. Id. However, the district court found that no misrepresentations were made to any Appellant, with the exception of Christopher Brooks Addington. The Court concurs with this factual conclusion.

Findings of fact by a trial court shall not be set aside unless clearly erroneous. Fed. R. Civ. P. 52(a). Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 394-395 (1948).

With the exception of Addington, the district court found that the Pittston Plan administrators clearly and accurately communicated the plan benefits to the Paramont employees in writing.[3] JA 3047-3048. Based on the evidence presented at trial,

---

[3]Specifically, the district court made the following findings: "...the uncontradicted evidence shows that, in the fall of 1988, prior to the merger of the Paramont Plans into the Pittston Plan, every then-current employee of Paramont received notice on at least two occasions that they would receive credit for their years of service with Paramont prior to January 1, 1989, in the calculation of their retirement benefits under the Pittston Plan. These notices came in the form of Robinette's 11-10-88 Letter, (Exhibit 3), and the Paramont Pride Article, (Exhibit 26). Further, a number of other accurate communications were distributed to Paramont employees after the merger of the Paramont Plans into the Pittston Plan on January 1, 1989. Miller's 4-10-90 Letter was distributed to all Paramont employees. Miller's 4-10-90 Letter states that Paramont employees' pension benefits consisted of two parts, "your pension benefits from the Paramont Plan through December 31, 1988,

20

the Court agrees that there was no concerted corporate wide effort to purposefully deceive Paramont employees with regard to their plan coverage for pension benefits. Likewise, there was no concerted effort to deceive employees about how their pension benefits would be calculated under the Pittston Plan after the merger of the Paramont Plans into it. Because the facts here distinguish this case from <u>Varity</u>, in order for Appellants to succeed with their breach of fiduciary duty claim based on alleged misrepresentations, they must prove that specific

and your pension benefit from the Pittston Plan from January 1, 1989." Perkins's 5-15-90 Letter also was distributed to all Paramont employees. Attached to Perkins's 5-15-90 Letter was a sample pension benefits calculation. This sample calculation used a hypothetical individual who had 14 years prior service with Paramont and eight years service under the Pittston Plan. The sample did not include the employee's time with Paramont in the calculation of benefits under the Pittston Plan, but instead used only the eight years of service under the Pittston Plan. JA 3048. With the exception of the five plaintiffs, Quillen and Rennie, every other witness who testified in this case stated that they understood at the time of the merger of the Paramont Plans into the Pittston Plan that Paramont employees' service from only January 1, 1989, forward would be used to calculate their retirement benefits under the Pittston Plan. These witnesses included upper level management with Pittston and Pittston Coal, management personnel with Paramont and Pyxis, Pittston and Pittston Coal human resources personnel, and individuals in the local human resources departments responsible for answering Paramont employee inquiries. JA 3048. Also, while there was evidence that there were errors in the calculation of retirement benefits provided to Paramont employees through Pittston's Annual Benefit Statements beginning as early as 1991, this evidence also reveals that of the 836 Annual Benefit Statements sent to the plaintiffs in this case, only eight percent contained an incorrect calculation of their retirement benefits. Also, of the 132 original plaintiffs in this case, the evidence shows that only 16 received one or more incorrect Annual Benefit Statements.

misrepresentations were made to them individually. However, because the Court determines that the named individuals were not fiduciaries of the Pittston Plan, the Court will not further address the merits of Appellants' misrepresentation claims. Therefore, the Court affirms the district court's holding that there were not misrepresentations by fiduciaries. Because this Court finds that there has been no breach or violation of fiduciary duty the statute of limitations issue is moot and will not be addressed.[4]

C.

Appellants aver that the district court erred in dismissing Appellants' claims for benefits under ERISA § 502(a)(1)(B).[5]

---

[4]Although the Court determines that Appellees did not breach their fiduciary duty with respect to Addington, the Court will still discuss the statute of limitations issue because Appellees seek to recover the mistaken overpayment issued to him. According to 29 U.S.C. § 1113, "No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of – (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." Because the evidence reveals that Addington did not know that the letter contained any misrepresentation until the Fall of 1999 and the case was filed in December of 2001, Addington's claim was filed less than three years after he learned of the misrepresentation.

[5]ERISA § 502(a)states: "A civil action may be brought -(1) by a participant or beneficiary -(B)to recover benefits due to him under the terms of his plan to enforce his rights under the terms

22

Appellants urge the Court to consider the Pittston Plan as a whole when determining whether or not the Plan is ambiguous. (Appellants' Br., 65.) Furthermore, Appellants argue that Exhibit G is ambiguous because there is nothing in Exhibit G that excludes benefit service with Paramont in the calculation of benefits under the Pittston Plan. (Appellants' Br., 65.) Again, the Court disagrees.

The Paramont Plans were merged into the Pittston Plan effective January 1, 1989. However, before it was effective, there was an amendment of the Pittston Plan to add Exhibit G. Exhibit G states in part that the accrued pension benefit in respect of periods of service prior to January 1, 1989, "shall be determined solely in accordance with the provisions of the Paramont Plan in which he was a Participant, as in effect immediately prior to January 1, 1989, based solely on his 'Benefit Service' (as defined in such Paramont Plan) on December 31, 1988 or any earlier date on which the Paramont Participant ceases to be an employee of Paramont Coal Corporation..." JA 315, 2964. Exhibit G also states that vesting service under the Paramont Plans would count as vesting service under the Pittston Plan. JA 315.

The Court finds that the language of Exhibit G is clear and unambiguous. Paramont employee retirement benefits for periods of service prior to January 1, 1989, the date of the plan merger, are

of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B)."

to be determined by the Paramont Plan. Also, Article IV of the Plan provides further guidance by stating that "the commencement dates for the benefit accrual computation periods for Employees of specified employers is included in Exhibit M." JA 170. Exhibit M presents a chart that displays the benefit accrual period start date based on an employee's company. Based on an examination of the Pittston Plan as a whole, the district court correctly awarded summary judgment to Pittston on Plaintiffs' § 502(a)(1)(B) claims. The language of the plan is not ambiguous.

## III.

### A.

On cross-appeal, Appellees assert that the district court wrongly held that the Administrative Committee's mistaken overcalculation of pension benefits breached a fiduciary duty to Addington. (Appellees' Br., 69.) Appellees do not contest that the Administrative Committee is a Pittston Plan fiduciary. However, they assert that there is no evidence that it breached any fiduciary duty to Addington when it sent him a letter overstating the amount of his pension benefits and overpaying him for five years. (Appellees' Br., 69.) The Court disagrees and holds that Pittston did violate its fiduciary duty to Addington because Pittston had an "unyielding duty of loyalty to the beneficiary." Griggs I, 237 F.3d at 380. The Court finds that Pittston's

24

fiduciary duty "encompass[es] more than merely a duty to refrain from intentionally misleading a beneficiary," but also includes a duty "not to misinform employees through material misrepresentations." Id.

The lack of intent to deceive does not insulate the Administrative Committee from liability based on the misrepresentation to Addington. Under ERISA, a fiduciary has a duty to provide beneficiaries with accurate information. See id.; Faircloth, 91 F.3d 648, 656 (4th Cir. 1996). Moreover, in Krohn v. Huron Mem'l Hosp., the Sixth Circuit stated that "a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." 173 F.3d 542, 547 (6th Cir. 1999).

The Court finds that the Administrative Committee breached its duty of loyalty and care by sending inaccurate communications to Addington. Parsley was a ministerial employee who calculated pensions according to the terms of the Pittston Plan. JA 3039. The Administrative Committee's 1-27-95 Letter to Addington did not contain accurate information concerning Addington's monthly pension benefits under the Pittston Plan. By relying on Parsley's incorrect calculation, the Administrative Committee's subsequent misrepresentation clearly violated its fiduciary duty to communicate accurately with a plan beneficiary.

25

Appellees argue that the district court clearly erred when it found that Addington relied on the mistaken calculation in deciding to retire early. The district court found that had Addington "been given accurate information concerning the amount of his monthly pension benefits, he would not have taken early retirement." JA 3191-3192. The Court does not find this determination to be clearly erroneous.

Appellees argue that no equitable relief is appropriate in this case. They state that Addington could not have relied on the information contained in the Administrative Committee's 1-27-95 letter because it was received after he took early retirement. (Appellants' Br., 74.) Contrary to this assertion, the district court found that Addington's benefits were not approved until the Administrative Committee sent out the 1-27-95 letter which states, "The Administrative Committee has approved your application for early retirement benefits..." JA 3191. Addington testified that, if he had been given accurate information concerning the amount of his monthly pension benefits, he would not have taken early retirement. JA 3192. Although Appellees dismiss this claim as inaccurate and self-serving, the district court did not doubt Addington's credibility and it is quite possible that Addington was waiting on the approval letter to finalize his decision. Based on the facts, the Court is not left with a definite and firm

conviction that a mistake has been committed in determining that Addington relied on the mistaken calculation. <u>See</u> United States v. United States Gypsum Co., 333 U.S. 364, 394-395 (1948).

C.

Because the Court determines that Addington relied and continues to rely on the mistaken calculation and subsequent payment by the Administrative Committee, it is necessary to determine the appropriate remedy in this situation. Appellees do not ask that Addington return the overpayment before receiving any future plan payments. (Appellee's Br., 76.) However, Appellees contend that any rescission remedy should require Addington to repay the overpaid pension benefits by offsetting any overpayment against any past payment due Addington. The Court disagrees.

The district court ordered that the Pittston Plan rescind Addington's election to retire early and raise his benefit to the $1256.00 monthly benefit he would have earned had he worked until his normal retirement date of November 1, 1997. JA 3196. Appellees contend that Addington has received an overpayment because he received $2,140.43 monthly from January 1995 until January 2000. JA 3059. However, the district court stated that it would be "unreasonable and inequitable" to order Addington to return "any of the early retirement he received." JA 3193, 3205. The Court agrees that partial rescission was proper in this case.

27

Although Appellees argue that the facts in this case do not justify partial rescission as necessary or equitable, this Court finds that the district court properly weighed the equities in its decision not to order Addington to repay incorrectly calculated pension payments. The evidence does not suggest that the mistaken pension distribution was caused by Addington but rather was the result of the Administrative Committee's miscalculations. See Phillips v. Maritime Association - I.L.A. Local Pension Plan, 194 F. Supp. 2d 549, 555 (E.D. Tex. 2001)(stating that while fault does not necessarily preclude restitution, a party's culpability is an appropriate equitable consideration). To punish Addington by forcing him to repay pension benefits that he received as the result of a mistake made by the Administrative Committee is contrary to the primary purpose of ERISA, which is to protect plan participants. The Court intends to restore Addington, as much as possible, to the position he would have been in had the mistake never been made without inflicting unnecessary injury on an innocent beneficiary.

The Supreme Court and this Court have expressly authorized federal courts to develop a federal common law of rights and obligations under ERISA-regulated plans. Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985, 990 (4th Cir. 1990). In Varity, the Supreme Court recognized that courts will keep in mind the special nature and purpose of employee benefit plans in fashioning

28

'appropriate' equitable relief. <u>Varity</u>, 516 U.S. at 515. Federal common-law restitution is to be used to further the purposes of ERISA and is governed by general equitable principles. <u>Luby v. Teamsters Health, Welfare, and Pension Trust Funds</u>, 944 F.2d 1176 (3rd Cir. 1991).

In <u>Griggs I</u>, this Court determined that reinstatement of employment is an appropriate equitable remedy when an employee had been induced to accept early retirement based on incomplete or inaccurate information for which the plan administrator could be held responsible. 237 F.3d at 385. However, based on Addington's situation, rescission of Addington's election to take early retirement and reinstatement to his former position is not appropriate or possible. Here, Addington took early retirement effectI've January 1, 1995 and has been out of the work force for approximately 12 years. Addington is currently 72 years old and Pittston has sold all of its coal mining operations. JA 3192. However, it does appear equitable and appropriate for the court to order that Addington be allowed to rescind his election for early retirement benefits and to reinstate him to the benefits he would be entitled to under the Pittston Plan if he had continued to work until his normal retirement date of November 1, 1997, which would be $1,256.00.

Normally, equitable rescission involves a restoration of the parties to the status quo as it existed before the rescinded

transaction. See Printer v. Dahl, 486 U.S. 622, 642 n.18 (1988)(noting that equitable rescission provides for restoration of the status quo). However, this Court in Griggs II stated that "the complete-restoration requirement is a general one that is subject to certain exceptions" and also stated that courts of equity may order rescission "where the equities of the situation so demanded." Griggs v. E.I. DuPont de Nemours & Co., 385 F.3d 440, 448-49 (4th Cir. 2004)("Griggs II"). Further, the Court stated that the formulation of the exception is somewhat broad to give federal courts the flexibility to appropriately balance the interests of participants and beneficiaries of ERISA plans against the interests and obligations of employers and fiduciaries. Id. at 449. Additionally, the Court stated that "a rule generally requiring full restoration of benefits to accompany a grant of rescission protects the financial integrity of ERISA plans, while permitting an exception to this rule when the equities of the situation demand[,] provides a necessary incentive for ERISA fiduciaries to take seriously their obligations to protect the interests of the participants and beneficiaries." Id. The Court finds that when applying this rule and the potential exception to the facts, it would be unreasonable and inequitable to order Addington to return any of the early retirement benefits he received or to offset the overpayment against any future payment in order to rescind his early retirement election.

30

The responsibility for the miscalculation of Addington's early retirement benefits lies with the Pittston Plan and with the Pittston employees who were entrusted with the task of computing his benefits. Because of Appellees' mistakes, Addington and his wife detrimentally relied on a stated monthly early retirement payment and have lived according to this fixed monthly standard for many years. See Kaliszewski v. Sheet Metal Workers' National Pension Fund, No. 03-216E, 2005 WL 2297309, at *8 (W.D. Pa., July 19, 2005)(highlighting the significant equitable concerns regarding the nine-year duration and extent of Plaintiff's reliance on the Fund's erroneous pension information and benefit payments, as to, e.g., lifestyle and financial planning in denying Defendant's motion for summary judgment). Thus, the equities of the situation demand an exception to the full restoration rule in order to protect Addington and provide a necessary incentive for Pittston to ensure that they are protecting the interests of future participants and beneficiaries. The Court affirms the district court finding that Addington does not have to repay the overpaid pension benefits.

For the reasons stated herein, the judgment of the district court is

AFFIRMED.